on the record, on the calendar. That is 22-50170, United States v. Esqueda. Or it may be Esqueda. Perhaps you can tell me that when we hear from counsel. I think you're both here in person today. Oh, that's so nice. Thank you for joining us in person. It's really wonderful to have lawyers back in the courtroom. Good morning. And may it please the court, Waseem Salahi for the appellant, Christopher Marcel Esqueda. Esqueda. Okay, thank you. And I'd like to reserve three minutes for rebuttal. Sure, certainly. Just keep an eye on the clock, please. Thank you, I will. You bet. This case presents a very narrow question of first impression. Can undercover officers, once invited into a residence, secretly videotape the occupants without a warrant, or is such an action unconstitutional under a trespass theory of the Fourth Amendment? Under the Supreme Court's decision in Jardines, the answer is no, they can't. The Supreme Court there was clear. When law enforcement officers enter a constitutionally protected area to engage in conduct that exceeds their explicit or implicit permission, they have conducted a search in violation of the Fourth Amendment. And to determine the boundaries of that consent or license, a court must look to prevailing social norms and common law trespass doctrine for the answer. So how did this action, the actions taken by the officers here, exceed the scope of the implied license to enter? Well, they had an implied license to enter, or excuse me, they had express consent to enter the motel room and to conduct a purchase of contraband. There's no dispute about that. Yeah. They exceeded that license when they secretly recorded. Well, let me ask you, I think this case is terribly important and really interesting. I don't know what will happen with future technology, but this part of the case seems to me, when I think about the license, it seems to be the case that this human could have left the room and testified to what he saw with his own eyes and heard with his own ears. So why is it different? Why did he exceed the scope by recording? I think I would just point this court to what happened in Jardines. One of the officers there could smell the odor of marijuana, and just because the dogs could smell the very same thing that the officer himself could smell, that made no difference because the focus is on whether the conduct itself actually exceeded the scope of consent. It's a behavioral inquiry. We look at what they did, and here we know that they, in addition to what they were allowed to do, they secretly recorded. Well, it is a behavioral inquiry. I agree with that. It's not subjective intent. Any officer doing any kind of investigation is going to be intending something different, right? But in Jardines, the conduct that was the front door, the implied invitation, but here I don't see it. We had case law prior to Katz about officers wearing wires. Why is this different? Well, those all involved a privacy analysis, and I understand. I just want to get to the point you had made about testifying to the same things that they observed. Well, they were entitled to observe what they saw, and they can testify. But that's just one lawful means of gathering information and evidence. The videotaping is unlawful because it, I know it sounds like I'm being circular here, but it exceeded the scope of consent. Well, but why? Because the individual was still, your client, I guess, was still you know, showing up, engaging in certain conduct that he didn't take care to hide from the officer, including his, you know, his appearance. So why is that a search? Right. Well, I mean, I'd also just point the court to one of the examples that Jardines had used when the officers entered, if an officer enters the cartilage, it stays on the walkway toward the door and decides to pull out a set of binoculars and peer into the home. That would constitute a search, even though it's just a visual observation, and even though there's no additional equipment that they're bringing or dogs or anything of the sort, it's just binoculars. The same conduct would not be a Fourth Amendment violation. It would be a search if he used binoculars, but not a search if he just looks through the window? Well, that's plainly observable. You know, if his intent was to walk in so that he could peer into the window and they had no intent to... So there's some sort of a mechanical element in the Constitution which prohibits the use of mechanics? I think I'd put it this way. The test is whether social norms would allow for the conduct, and if an officer walks into the cartilage and happens to glance through an open window, that's not a search. What particular social norm do you have in mind? This is a California case. Did you cite Section 632 of the Penal Code? No, I didn't, but I think that the... I'm not familiar with that specific statute. Well, it makes the unconsented recording of a conversation of crime. Right. And so, I mean, and specifically here when we put it in terms of the Jardines test, we look at habits of the country. We look to prevailing social norms, and I've cited a number of civil trespass cases where courts have recognized that consent does not include secret or surreptitious recordings, and those cases apply to a business setting. Mr. Salali, I guess I understand that the social norms become part of the trespassory test only when they're liquidated into the common law, and of course that's what Jones and Jardines is talking about, is we're looking at the trespassory test as opposed to the privacy test. But I guess my question for you is more fundamental. You'd refer to the pre-CATS test as pre-CATS cases, both in our court and the Supreme Court as being based in privacy, but it was CATS that introduced privacy. Those pre-Lopez and on Lee are both applying the trespass test that Jones and Jardines apply. Are they not? I don't think so. But doesn't Jones and Jardines say that CATS is what changed it in the prior law until 1791 to then? And that's one of the reasons why I carefully tried to explain those cases in my opening brief and why they wouldn't foreclose the conclusion here or determine the outcome. But are they distinguishable based on their facts or reasoning? They don't strike me as trespassory standard that they are applying. They seem to be doing the same thing that Jones and Jardines are and reaching results that may control this case. They're distinguishable in several ways. The first is that they both occurred in business settings. So the types of... It's not an enumerated... But your client made this a business setting. He invited him in to do a transaction. There's no dispute that this was his motel room and motel rooms have been treated as homes. I'll grant you that point. So I'm splitting hairs. Go ahead. The first way you distinguish in answer to Judge Johnson's question is it's a motel room and you're likening that to the home. And I shouldn't have interrupted. Go on, please. And so the court wasn't going to be able to treat either of those settings like a home. And in one, it was a laundromat where customers were freely coming and going. So even assuming that the courts were considering a scope of consent test, which really only appeared for the first time in Jardines, even assuming that, the types of norms that would be allowable in a business setting are very different. Okay. What's the next way you think they're distinguishable? Well, I think that neither of them applies the scope of consent test in an enumerated place. Do you think I'm wrong to think... Because I think of Jones as hearkening back, even though we had been for several decades thinking about cats, cats, cats, expectation of privacy. Jones hearkened back to pre-cats, to this trespass theory basis. And so do you think it's wrong to think of these as two parallel tracks? I think, and I want to make sure I'm hitting on the nuance, but I think that what Jones did was it resurrected the uncontested view from pre-cats that any physical intrusion without consent is a search. But we have... Oh, go ahead. But then Jardines was the first case to consider what happens when there's some consent, and how do we judge whether the behavior exceeds consent? And I think of that as a novel issue that was brought before the Supreme Court. Okay. I agree with all of that, except we're in a case involving express consent. Admittedly, it's a motel room, but the allegation, which I think is uncontested, was come on in. And the intent was a commercial transaction. Purchase of a gun and drugs is what we're talking about. And since there is that express consent, it seems to me it leads us back on the trespass side. It leads us right back to how did this exceed the scope of the consent? An officer wearing a wire under this very same circumstance, I think, could not come in and open a drawer, wasn't invited to do that. I think if we had advanced technology that allowed the officer to listen into the next room, that would be a different case for sure. But my thing, and I want to give you every hint, he could see and hear with his own eyes and ears. And that's why it strikes me as that the express consent was not exceeded. Well, the express consent is only limited to entering, purchasing, contraband, and leaving. And hearing what is said between the parties. Correct. And did the recording device capture anything that the agent couldn't hear himself or see himself? I'd say I don't think it makes any difference. Well, it did in Omni and it did in Lopez. As they said, so long as the recording does not see or hear more than the agent himself could see or hear. And I don't think it makes a difference in Jardines. Because in Jardines, again, the officers were just, the dogs were just smelling what one of the officers himself could smell. So just the fact that there's one way of obtaining information that would have been within the scope of consent, that doesn't suddenly render Moo an unlawful. I think your reading of Jardines and your reading of Jardines, it doesn't matter whether the officer walked around the house. They never left their dogs behind. They didn't circle around the house. Perhaps the dogs had better sniffers than the agents had and smelled more than the agents. But the recording device doesn't grasp anything other than what the agent could have heard. Well, I have two responses to that. The majority in Jardines didn't adjust their analysis based on the ability of the dogs to sniff. It was the officers using the dogs. And that's why using binoculars was similarly to be considered a search. A video recording, this is going into my next point, is actually much more, offers a much more probative use than binoculars would to an officer. It creates a permanent, reviewable record that can be zoomed in on in perpetuity. It can be fed into all sorts of new advances of technology. Well, that's not this case, as Judge Christian said. But I just wanted to push back against this idea that they're just recording what they saw. As I understand it, I guess our challenge here, or your client's challenge, is that you're asking us to create a circuit split. And we've got Jardines and Jones, which rely on the trespassory rule and implied consent. But we don't have a new case from the Supreme Court dealing with the scope of consent under the trespassory test. We do have two old cases, Onley and Lopez, for us to rely on. And then we have cases our courts decided, subsequent to that, that even after CATS explicitly referenced those. So, I guess I'm trying to understand what it is, you say that Onley and Lopez just didn't reach the scope of consent question. But it strikes me that they're susceptible of a reading where they did. So, what are we supposed to do, given that Jones and Jardine don't talk about the express consent that's at issue here, and Onley and Lopez do? Well, I mean, I think just as a threshold matter, we are in the world of implied consent. Because you can't expressly consent to being secretly recorded. It's just impossible to do that. But Onley and Lopez take that step and suggest that it is within the scope. So that it is not a trespass. Well, not under, they didn't determine that with the test that Jardines has announced. And they did neither case look to prevailing social norms to find the answer. And even if they had, the norms that would exist in a business are very different from the norms that would happen inside someone's home or motel. Just to close this out, is there a difference between social norms and the laws of the country as reflected in your brief and the amicus brief? It's a great question. The way that I framed it was that these laws or the trespass cases have just confirmed our deeply held social norms. I think we can, part of the inquiry can just be based on common sense and what we would naturally expect. It would be strange if Jones and Jardine, if Justice Scalia was getting away from the cat's test, right, out of the frying pan into the fire of just freewheeling social norms now, not even reasonable expectations of privacy, if we couldn't root that in some common law or some law of the country, right? I think so. But Jardines didn't cite a single trespass case to justify its conclusion. It looked at common law principles to announce the test about how using habits of the country, but the dissent was very vocal about the fact that they found no trespass cases to support this view that bringing dogs in would constitute trespass. I found at least quite a number of them. So I think they can be informative. I don't think it's dispositive. And I'd just like to point out one last thing about express consent. I don't think the court would treat it differently just because there was express consent to enter. Jardines did use the example of someone consenting to a search of the trunk for a body. That wouldn't necessarily allow for the officer to do a general rummaging for narcotics. Just the fact that that was offered up as an example to describe what consent means, I think, suggests that implied and express consent can be treated similarly. We've taken you over your time. For planning purposes, we're going to hear from opposing counsel. We'll put two minutes on the clock when you come back. Thank you very much, Your Honor. You bet. That was exciting. I do need you, when you get situated, to move the microphone back so we get a good recording. There you go. Good morning, Your Honors, and may it please the Court. Nisha Chandran on behalf of the United States. Now, I'd like to begin this morning by reframing the Fourth Amendment analysis. And as this Court knows, the Supreme Court has created two tests for searches under the Fourth Amendment. The first test, which is the test that we're talking about today, is under Jones and Jardines. But under that test, the government can physically intrude or physically enter and occupy a In this case, we are really focused on that physical intrusion. And we're asking, essentially, in this case, whether the agent can stand where they are standing. And then, of course, under the second bucket, the government can also infringe on a person's reasonable expectation of privacy. But as discussed already, the parties both agree, and as this Court knows, that has been decided under that test as not infringing on the constitutional rights under Wachamwa. So here, we're really under the physical intrusion bucket. And there are several facts that are important and that are undisputed. Here, the agents were expressly invited into the motel room. And that was for the gun and drug deal, which is exactly what happened within the room. And it is also undisputed that they did not stray to any other portions physically of that motel room. Do you agree that they would have been able to open a drawer or maybe even walk into the bathroom? No, Your Honor, because here, that would constitute a physical intrusion. But the answer is yes. You just said no. I apologize. Yes, that would be a violation because we're looking at the physical intrusion within the space. Right. And they weren't invited to do that. And I wouldn't think that's part of the deal. That's correct, Your Honor. Okay. Ms. Chandler, what about if they had a mechanical sniffing device that smelled drugs in that drawer? Your Honor, going back to the framework of the two portions of the test, that would not be a physical intrusion, assuming that the facts are as they were here, that the agents went physically to the exact location that the drug and gun deal was supposed to happen, and then they left. However, I understand Your Honor's question, and that would potentially be a violation of the reasonable expectation of privacy under the second bucket of the question. Counsel, I'm going to interrupt you because I want to make sure we get the answer to this question. Could you move the microphone closer, please? Yes, I apologize, Your Honor. This you need to move closer, not the . . . there you go. Okay. We want to make sure we get a good recording. You were answering Judge Johnstone's question. I think you answered it both ways. Do you think that's an intrusion or not? It would be an intrusion. However, it would not be a physical intrusion under the Jones and Jardines test. That means it's a search or not, an impermissible . . . It is a search, Your Honor. It would just be analyzed under the reasonable expectation of privacy test. Okay. Well, okay. So what about, let's make it not a dog. Let's make it a mechanical listening device that can listen through the wall. Would that be permitted? Again, assuming the physical facts in this case, that the agents, again, had expressed consent and were physically staying in the location of the room where they were able to be, under the first bucket, under Jones and Jardines, there would be no physical intrusion of the space. But again, I would answer similarly that then the court would analyze whether the reasonable expectations of privacy were violated while they were in the room. And so I'm just patiently waiting for you to answer the question. Would that be a search? That would be a search under Kylo in this case. Okay. All right. So I think I agree with that. Let me ask you about an observation that the person, just make it a hypothetical person, invited into a hotel room and makes observations in the room, right, but he's human. So he can't remember every little thing and may not be able to recognize a face. But back at the lab, the police can look at that film and make observations and recognize maybe stolen property or maybe identify a face with facial recognition software. Does that technology change the outcome? Your Honor, in this case, of course, there's no evidence in the record that that occurred here. But that's exactly what the court was discussing in Kylo when Kylo said that mere visual observation is no search at all and that if the officers are lawfully present where they're supposed to, where they're allowed to be, that's what this court held in Wachamwa, that it's not simply transformed into a search because they are recording it. So that has been decided. However, the additional, and so therefore all of the observations are simply the most accurate version of what happened in the room. That's what the Supreme Court held in Lopez. I think that's probably right. I'm just trying to pause it and push back on this because, of course, Fourth Amendment is a very important interest. And I'm not sure where this falls apart with enhanced technology. And I started, my first question today was, why can't he testify to what he could see with his own eyes and hear with his own ears? But when it requires facial recognition software or a careful analysis later to identify my hypothetical stolen property, for example, it seems to me to get closer and closer to the edge. I would agree with Your Honor. However, under the Jones injury, I would agree with Your Honor that all of those analyses are very important. And of course, as technology evolves, that they may have differing outcomes under the reasonable expectation of privacy test. But of course, that, in this case at least, is undisputed, that under the reasonable expectation of privacy test, that the defendant here loses under Wachama because it was— Well, I appreciate that we're on the trespass side of the ledger. I'm thinking of these as two entirely distinct lines of inquiry. But I still think it gets closer. I would agree with Your Honor, but under the reasonable expectation of privacy analysis, because here the physical—assuming the facts are the same as they are here, that the agents physically did not stray within the room, that they are physically under the Jones injury. But you're just persistently avoiding my question. I'm not asking you about an expectation of privacy. I am asking you about trespass, on the trespass side of the ledger, and it sounds like maybe your answer is that you don't think it's a closer call, even with enhanced technology, because they were invited into the room. Is that what you're telling me? That's correct, Your Honor, because the trespass side of the ledger turns on the physical intrusion. Jardines itself began its analysis by saying it was a physical intrusion case. So what we're really saying, if I could get you to focus on this point, is that you don't think it's any more physically intrusive, once they enter, to be recording—and I'm positing taking photos of the inside. Let me make it inside of my home. You think that's no more intrusive? Because I did not expect dinner guests to be photographing my home. Understood, Your Honor, and I agree with the court's concern. It's just that that would be—once the agent is inside, then that would be a violation of the reasonable expectation of privacy. So under the trespass test, anything the agent can manage to bring in on her body is within the implied consent? And so we've talked about facial recognition software, some hypothetical mechanical sniffer. Anything that is on the agent's body is part of the consent, whatever they bring in. It would be part, yes, of the physical—under the physical intrusion bucket, there would be no additional physical intrusion. But of course, under a reasonable expectation of privacy test within the same room, there could be a different analysis and violation there. And then if you're looking at physical intrusion, if the agent simply has a recording device in a pen and they set that down and then walk into the other room, that makes the difference? Because there's a physical intrusion, they've just done the Jones thing to the table by putting a pen on it? That may get closer to the line here, Your Honor. Of course, in this case, it's undisputed that there was no physical affixing of the cameras to the wall, which the Supreme Court found significant in Lopez, which the court also highlighted in—the Seventh Circuit highlighted in Thompson, and this court highlighted in Mwachamwa. But here, of course, there is no additional physical intrusion. But I would agree that under the analysis in Jardines, which looked to, even in analyzing the scope of consent, look to objective conduct. The analysis— What if he had a puppy in his pocket that was really good at sniffing? A small puppy. A small puppy, had no idea that the dog was there. Just because it's on the agent's body, that's an implicit consent. Again, Your Honor, I believe that that would not be a physical intrusion, because there would not be additional physical intrusion within the space. But I do agree with Your Honor's concerns. There goes Jardines, right? That's really tough for you. What if—your case is a lot easier, because the expressed permission to enter was to do a drug deal, or buy a gun. But what if the hypothetical were this? What if there's a knock on the motel room door? Or it could be a home, if you want. And the person, the occupant, lets that person in, it's a flower delivery, right? Come on in. But once that person gets inside, the florist or the room service delivery person, then the person turns to the homeowner and says, you want to buy some drugs? What happens then? There was express permission to enter, but the person's wearing a wire. Of course, that's not this case, but under Your Honor's hypothetical, as long as there is no physical intrusion with them, if they're physically in the space that the consent contemplated. So, if the consent in this case was for the drug deal, so they went to the places that the drug deal was happening. So, in Your Honor's hypothetical— My hypothetical is the homeowner doesn't know there's a drug deal. The homeowner thinks they're receiving flowers. And so, under the first bucket, under the privacy intrusion, or I'm sorry, under the physical intrusion bucket, we would ask whether that individual was, for the purpose that they were let in for the flower delivery, if they were in those spaces. So, I think the answer to my question is you don't see any problem, even on the trespass side, because they were expressly entered for any purpose. And once they're inside, once they do a drug transaction, and that's on my hypothetical, kind of a silly hypothetical, is being recorded, you think there's not a problem? There's not a search, is what you're arguing?  There would not be a search. And what about on the cat side? On the cat side, that would be a different analysis, and we would be looking at whether— and I would agree that under— I would similarly say there's not a search. Under Onley, Lopez, Wachamwa, that by inviting that individual into the home and then consensually engaging in that drug transaction, that the same risks were present to that defendant. Are you trying to get a word in edgewise here? Did you have a question that I cut off? Forgive me. It sounds like Onley and Lopez, they don't have quite as strict a view of physical intrusion, I think, as the test you're proposing. I do pick up some sense of, whether it's social norms or trespassery standards, they seem to be a little more malleable in terms of social expectations around property rights than the test you're presuming. So are you saying that the idea of— and it's not just the physical trespass, right? It's physical trespass without consent. That there's nothing that can inform— again, as long as it's on your body, that doesn't change from Onley and Lopez, the fact that they were different situations. As long as it's not a physical trespass, no amount of change in our understanding or the law of the country can change what trespass means. It is just stuck at whatever it was at the time of Onley, no matter what the rest of the country thinks. Even if the law of trespass and the law of consent changes, we're stuck in the mid-1950s with whatever technology from the 2010s or 2020s that the government wants to bring into it. Well, Your Honor, I would highlight, in responding to your question, that Jardines was an implied license case. So the reason that the court looked to the social norms was to determine the scope of that implied license. Of course, here, this is an express consent case, so the co-defendant himself explained the scope of that license. We see the text messages at ER 138 to 140. We see—or I'm sorry, that was at ER 144 to 152. That's not contested. Your point's very well taken. Express consent case. And so as to the social norms, that was only looked at because of the implied consent posture of Jardines. So here, as we look to physical intrusion, even we see in Jones and Jardines that they looked back to common law. They looked back to English law, and there were citations to that. So from a physical trespass perspective, that is what we are looking at. But common law changes. Common law, its genius is that it evolves and eventually liquidates these social norms. And it strikes me that your physical intrusion test, that everything that Onley could consent to or Lopez could consent to, is going to cover everything the government might be able to put on an agent's body for the indefinite future, strikes me as not recognizing even what Onley and Lopez are talking about and what Jones and Jardines are doing when they root this in the common law. Well, Your Honor, I would point the court to in Jones, which of course was a pure physical trespass case, there is a citation to Onley, and the context of that is important. It's a CF signal. It's a CF. It is. That is true. But the context of that is important because it's in relation to the Caro case. And Caro, of course, as this court knows, involved the beeper attached being delivered to the defendant. And in Jones, they described saying that the defendant there accepted the container as it came to him, beeper and all. And so here under a physical trespass test, which of course Jones was a pure physical trespass test, here there would be no physical trespass of that additional technology coming in. But I do agree with the court that there could be several concerns there under the reasonable expectation of privacy test. So I don't believe that the court's concerns would go unaccounted for. They just would be analyzed under a separate test, the reasonable expectations of privacy test, which is just not at issue and concededly decided in this case. Any other questions? Thank you for your arguments. Very helpful. We'll hear from opposing counsel. Thank you, Your Honor. And I'd just like to make three points. One is that I really want to push back against this idea that just because they were recording what they already saw, that that doesn't constitute a search. And I want to contextualize where that framing and logic came from. That emerged from our privacy cases from Katz, because once you've divulged information to someone, you have forfeited your privacy interest in it. So you have no right to claim a valid expectation of privacy in it, even though it's been recorded. In the same sense that you can't be upset with someone for picking up something that you've thrown away. It's the interest is gone. So there's no... But we're talking about pre-Katz case law. You appreciate that we're, I think Judge Johnstone and I, maybe Judge Bea asked the same thing. We're looking at pre-Katz case law. Right. And again, those cases are not, they did not analyze the scope of consent within a home. And so they can't be relied on here because Jardines was clear that we have to look at prevailing social norms for the answer. The second point I'd like to make is Jardines doesn't require a physical intrusion. The definition of a search there is entering a constitutionally protected area to engage in conduct that exceeds explicit or implicit consent. Was there any consent at all to have the officers and the dogs on the curtilage? There's implied consent to do a knock and talk. And so they were well within their right to enter the curtilage and to take the path to the front door. They wouldn't have been to walk around the house, right? So we talked about that earlier. You're envisioning this as when you say implied consent, anybody can walk up that to the front door. Correct. Yeah. And they exceeded the scope of that consent by bringing dogs to sniff around. And so we believe that, or our position is that Jardines involves a case where they had consent, just like the officers here, to be inside a constitutionally protected area. And so then the adjustment is, did they engage in conduct that was explicitly or implicitly permitted? And once we shift to that analysis, it's clear that no social norm can be read to permit undercover recording. I think as Judge Kristin- But dogs can sniff what humans don't sniff, correct? In some circumstances, right. But in Jardines- Can recordings listen to words that a human didn't hear? I do think that recordings provide a much more perfect- Can they hear more than they hear? No, but I'd also think that dogs don't always smell what humans can't smell. The human- They have increased sensitivity to smell, do they not? They have more receptors in the nose than we do. They're better at us. They're better than us in many ways. So if I could, once again, we're taking you over time, but it's an important and interesting case. So I think what you're suggesting is that we should go back to my dinner party analogy. I've invited you into my home. I don't expect you're going to take photos of my home. That's exactly right. Okay, so this is a motel room, and you have stressed that in your briefing. It's a motel room, but this person was invited in to do a drug deal or allowed in to do a drug deal, right? So help me out with this part of your- Sure. The social norms don't change, or at least let's say with Jardines, for example. The court didn't adjust the social norms just because of the fact the defendant there was growing marijuana in the home. He was manufacturing controlled substances, and it didn't suddenly shift to like, well, what are the social norms that might- So your social norm is a reasonable third party out there. It's not what this individual in the motel room would have expected when he opened the door and said, come on in, or when he sent those text messages. Probably say like a reasonable, polite guest. What would a reasonable or ordinary, polite guest do within the typical norms of society? I'm not trying to be flippant. I know how important this is to your client, but I think you're just saying reasonable, polite drug buyer. Well, in this situation- Well, I think you are. Really, I'm trying to figure out what do you mean by that? Because the perspective seems to me you're- If I take as uncontested the fact that your client invited these folks in to do a drug deal, then isn't that what we're talking about? You think they exceeded the scope because they weren't reasonably polite? I would put it in this way. We consult the question in the abstract. What would a reasonable guest, or excuse me, what would a typical owner consent to when a guest enters the home? Because that's what your deans did. Once we've established that a home is a home, the standards of a home apply. Okay. I don't think the question shifts to what would a polite drug dealer do or drug buyer do, but even if we were to go- A drug dealer might expect to have undercover agents wired, might he not? It's a reasonable expectation. They wouldn't consent to it, that's for sure. Of course not. One point that I'd like to just also point out about CARO, the Supreme Court's decision in CARO, they made it clear that once that box enters a physical residence, that constitutes a trespass. Just because you might accept a package in all its contents into the home, or as just a general matter, the analysis shifts once it's taken inside a home. Thank you for your argument and advocacy, both of you. Your arguments were really helpful. A very excellent presentation, so thank you for that. Thank you. We'll take this case under advisement and go on to the next case on the right.
judges: BEA, CHRISTEN, JOHNSTONE